IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **VANDER DAVIS, JR.,** * | |
| Plaintiff * | |
| v. * | Civ. No. DLB-24-1674 |
| **MD. DEPT. OF PUBLIC SAFETY AND** * | |
| **CORRECTIONAL SERVICES,** *et al.*, | |
| * | |
| Defendants | |

**MEMORANDUM OPINION**

Vander Davis, Jr., who is proceeding without counsel, alleges that during his incarceration at Roxbury Correctional Institution ("RCI"), he has been denied reasonable accommodations under the Americans with Disabilities Act ("ADA") for his profound hearing loss and, consequently, discriminated against because of his disability. The defendants, Maryland Department of Public Safety and Correctional Services ("DPSCS"), RCI, and the Department of Corrections, have filed a motion to dismiss or, in the alternative, for summary judgment. Davis opposes the motion. For the reasons stated below, the defendants' motion, construed as a motion for summary judgment, is denied, and Davis's motion for reconsideration of his motion to appoint counsel is granted.

**I.   Background**

Davis states that he is a deaf inmate incarcerated at RCI. ECF 1, at 4. He claims that, since his arrival at RCI, he has been denied access to the relay phone service used to accommodate deaf inmates' use of the phone. *Id.*[1] Davis was issued a tablet, but he claims that the tablet did not

---

[1] The relay phone service uses a teletypewriter ("TTY") and a communications assistant so that a person with hearing loss can type and receive text messages that are translated to and from speech by the communications assistant.

provide him "access[] to phone service like the rest of the inmate population." *Id*. at 4; ECF 1-1, at 2, 4. Davis states that he was told two years ago that the administration was aware that the relay phones did not work and that the phones were being repaired. ECF 1, at 5. According to Davis, the phones were unrepaired when he filed his complaint. *Id.*

Davis states he also has been denied assistive listening devices that would notify him of public announcements to the inmate population and warn him of dangers. *Id.* at 4–5. In a verified attachment to his opposition, Davis states that twice, first on July 27 and again on October 5, 2023, he was "almost" hit by a "buggy" that rides throughout RCI because he could not hear the buggy. ECF 17-7, at 1, 3; *see* ECF 17-9, at 1. Davis states he missed recreation and showers on July 30 and 31, August 5, and September 19, 2022, because he could not hear the announcements for them. ECF 17-7, at 1–2. He additionally states he missed "clothing pass" on August 12, 2022 and missed gym on November 21, 2022 because he did not hear the announcements. *Id*. at 2. Davis also claims that, because he did not have an assistive listening device, he did not hear a direct order on August 16, 2024, and as a consequence, he was placed on disciplinary segregation.[2] *Id*. at 5.

In Davis's view, the failure to provide him with phone access and a means to be notified of public announcements places him in harm's way and denies him the opportunity to participate in the same activities as non-hearing-impaired inmates. ECF 1, at 4–5. Davis alleges that the

---

[2] He additionally claims he was moved to a "gang tier" after he complained to the ADA Coordinator about the lack of accommodations for his hearing-impairment and suggests that this transfer to a housing unit for inmates without disabilities like his was an act of retaliation. ECF 17-4, at 5–6. Davis did not raise this retaliation claim in his complaint; it is raised for the first time in his opposition and is therefore not properly before this Court. *See Woodbury v. Victory Van Lines*, 286 F. Supp. 3d 685, 692 (D. Md. 2017) (stating that a plaintiff may not use their memorandum in opposition to amend the complaint); *Allegis Group, Inc. v. Bero*, 689 F. Supp. 3d 81, 142 (D. Md. 2023) (same).

defendants' failure to provide phone access and assistive listening devices to accommodate his hearing impairment is disability discrimination in violation of the ADA. *Id.*

On August 13, 2022, Davis filed an Inmate Request for a Communication Access Real-time Translation ("CART"). ECF 17-9. There is no evidence of whether his request was resolved and, if it was, when and how.

On November 11, 2022, Ross Cushing, an audiologist evaluated Davis. ECF 1-3, at 2. In a January 24, 2023 letter to Davis, Cushing stated that Davis had a hearing disability and advised him that Cushing had submitted his evaluation and a report to YesCare to inform them that Davis had been unable to successfully adapt to hearing aids and that Cushing recommended follow-up care with a physician. *Id.* Cushing also stated that Davis should be "considered for relocation to a different facility that is more appropriate for deaf and hard-of-hearing patients" and should be considered for "a cochlear implant evaluation." *Id*.

Meanwhile, on November 19, 2022, Davis filed an administrative remedy procedure complaint ("ARP") alleging that the tablet he was provided on November 2, 2022 "did not include the necessary equipment to address [his] hearing disability" and that he had been denied access to the relay phone service. ECF 1-1, at 2. His complaint was dismissed on November 23, 2022 as untimely. *Id.* On December 5, 2022, he filed an appeal to the Commissioner of Correction, but the Commissioner did not respond. *Id.* On February 21, 2023, Davis filed a complaint with the Inmate Grievance Office ("IGO"), asserting he had been denied the opportunity to participate in the Inmate Tablet Program and denied access to the relay phone service at RCI. *Id.*

On May 2, 2023, IGO Director F. Todd Taylor, Jr. issued a decision on the complaint. The IGO Director noted that the dismissal of Davis's ARP as untimely had been improper and "decided to review [Davis's] case on the merits" given "the serious nature of [Davis's] request." *Id.* He

3

found that Davis received a tablet on November 2, 2022 and returned it one week later because Davis "believed it did not have a closed captioning feature that would allow [him] to effectively use it." *Id*. The IGO Director stated that "correctional staff attempted to show [Davis] how to access the closed caption and other adaptive features on the tablet, but [Davis] chose not to avail [him]self of them and returned the tablet." *Id.*

The IGO Director also noted that, on April 28, 2023, Davis was issued a new tablet, which he used three times that day for a total of 38 minutes. *Id.* The warden alerted the ARP coordinators "of the issue [Davis] raised] and gave "them a copy of the adaptive services guide to assist in answering any questions [Davis] and any other hearing-impaired inmates have using the tablets." *Id*. The IGO Director concluded that "the difficulty [Davis] first experienced was due to [his] misunderstanding how the tablet accessed the features [he] need[s] to use it rather than any act on the part of the correctional staff" and that the issue regarding the tablet had been addressed. *Id*.

As for Davis's complaint that he did not have access to the relay phone service, the IGO Director stated that additional dedicated TTY lines were being added to address the needs of hearing-impaired inmates. *Id.* at 3. He did not address whether the tablet could be used to make phone calls in lieu of the relay phone service or whether Davis used the tablet for that purpose. *Id*. at 2.

The IGO Director dismissed the complaint, reasoning that Davis's issues had been addressed adequately and did not meet the requirements for a hearing before the Office of Administrative Hearings. *Id*. at 3. After his complaint was dismissed, Davis was provided with a pocket-sized hearing-impaired communications book to assist him with any questions he had about the dismissal of his IGO complaint. *Id*. Davis insists that his problem was not "fixed" when he was shown how to use the tablet because he still did not have the phone service access that other

4

inmates had. *Id*. at 4. He states that he used the tablet to "play[] games[,] read[] the Bible, order[] commissary, etc.," not to make phone calls. ECF 17-1, at 13.

On February 6, 2024, Davis filed a complaint with the ADA Office, complaining that the relay phone service has been inoperable and seeking a CART assistive aid for his parole hearing. ECF 1-2, at 3. On February 16, 2024, Michele Gardner, Department ADA Coordinator for the DPSCS, acknowledged that the TTY telephone at RCI was inoperable but that "the situation is being rectified." *Id.* Gardner stated that the complaint had been forwarded to the warden and assured Davis that RCI Case Management staff would "make arrangements with the Hagerstown Parole Commission to request that an acceptable communication aid [was] available for [his] parole hearing." *Id*.

On February 5, 2025, the defendants filed a motion to dismiss or, in the alternative, for summary judgment. ECF 15. In support of their motion, the defendants filed a declaration from Amy Jeffcoat, the litigation coordinator for RCI, but they did not provide Davis's medical records or any other evidence of Davis's requests for accommodations and their responses. Jeffcoat acknowledges that Davis is completely deaf in one ear, has severe hearing loss in the other ear, and was approved by the medical department for use of auxiliary aids to assist with his hearing loss. ECF 15-2, at 1, ¶¶ 3–4. She also states that Davis has been seen by the medical care providers for chronic care visits to address his hearing impairment and has been evaluated for a cochlear implant. *Id.* at 2, ¶ 7.

Jeffcoat states that inmates who are approved for use of auxiliary aids must make a request for the aid to be ordered. *Id*. She asserts that Davis has not made such a request. *Id*. Records and a declaration that Davis submitted indicate he did make a request. *See* ECF 17-4, at 2, ¶¶ 7, 8 (Davis decl.); ECF 17-9 (Aug. 13, 2022 Inmate Request for CART). Jeffcoat also states that "Davis has

5

been provided a small hearing-impaired picture book that he can carry with him or always keep in his cell so that he is able to communicate with the correctional personnel who have the same book." ECF 15-2, at 2, ¶ 5.

On February 26, 2025, Davis filed an opposition to the defendants' motion. ECF 17. Davis also filed a motion for reconsideration of his motion to appoint counsel. ECF 7. The defendants did not file a reply in support of their dispositive motion or an opposition to Davis's motion for reconsideration, and the time for these filings has passed. *See* Loc. R. 105.6.

## II.     Standard of Review

The defendants' motion is styled as a motion to dismiss for failure to state a claim or, in the alternative, for summary judgment. The Court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs. *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c). The Court also may consider documents integral to and explicitly relied on in the complaint when their authenticity is not disputed. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015). When the parties present and the Court considers matters outside the pleadings on a Rule 12(b)(6) motion, the Court must treat the motion as one for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Davis received sufficient notice that the motion may be treated as a summary judgment motion. On February 16, 2025, the Court sent notice advising Davis that the defendants' motion could be construed as one for summary judgment and could result in the entry of judgment against him. ECF 16. Moreover, the defendants' motion, identifying summary judgment as possible relief, provided sufficient notice for Davis to have a reasonable opportunity to present relevant evidence

6

in support of his position. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Thus, the Court is satisfied that Davis has been advised that the defendants' motion could be treated as one for summary judgment and that he has been given a reasonable opportunity to present materials in response to the motion.

In response to a motion for summary judgment, a party may file a Rule 56(d) affidavit detailing the specific facts that are yet to be discovered and are necessary to defeat summary judgment. *See Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Rule 56(d) motions are "broadly favored and should be liberally granted" in order to protect non-moving parties from premature summary judgment motions. *See Greater Balt. Ctr. for Pregnancy Concerns*, 721 F.3d at 281 (quoting *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010)). Even so, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in the Rule 56 affidavit must be "essential to . . . [the] opposition." *See* Fed. R. Civ. P. 56(d). A Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *See Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995).

Davis has filed a Rule 56(d) affidavit seeking additional discovery before the defendants' motion for summary judgment is resolved. ECF 17-3. He asserts that he "cannot present essential facts and information possessed only by the movant to justify its opposition, without needed discovery." *Id.* at 1. He then provides an affidavit, a list of 17 individuals whom he would like to depose or from whom he would like to seek written discovery, and a list of disputed facts. ECF 17-4, 17-5, 17-6. But Davis does not specifically identify what discovery is necessary for him to create a genuine issue of material fact and defeat the defendants' motion for summary judgment.

Moreover, Davis has presented evidence to refute the defendants' assertions. *See* ECF 17-4, 17-7, 17-9. His Rule 56(d) request is denied. The Court will resolve the motion under Rule 56.

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Id.* at 251. The Court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249). However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is proper. *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

## III.    Discussion

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. It prohibits public entities, including "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government," *id.* § 12131(1), from discriminating "by reason of" disability against a "qualified individual with a disability." *Id.* § 12132. Title II applies to state prisons. *See Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) ("State prisons fall squarely within the statutory definition of 'public entity[.]'").

For purposes of Title II, a "qualified individual with a disability" is defined as an individual with a disability "who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). A private party may sue to enforce Title II of the ADA. *Barnes v. Gorman*, 536 U.S. 181, 184–85 (2002).

To prevail on a Title II claim, a plaintiff "must prove '(1) they have a disability; (2) they are otherwise qualified to receive the benefits of a public service, program, or activity; and (3) they were denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of their disability.'" *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 750 (4th Cir. 2018) (quoting *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 503 (4th Cir. 2016)). To establish "the third element, causation," a plaintiff must show "that the disability was 'a motivating cause' of the exclusion." *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461–62 (4th Cir. 2012)

9

(quoting *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468–69 (4th Cir. 1999)). "[D]iscrimination [i]s not limited to 'outright intentional exclusion,' but [i]s also to be found in 'the "failure to make modifications to existing facilities and practices."'" *Lamone*, 813 F.3d at 505 (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001) (quoting 42 U.S.C. § 12101(a)(5))). Thus, "[t]he third prong may be satisfied by showing the defendant failed to make reasonable accommodations when the qualified individual with a disability has either asked for an accommodation or where the need for one is 'open and obvious.'" *Baxley v. Jividen*, 508 F. Supp. 3d 28, 63 (S.D.W. Va. 2020) (quoting *Cadena v. El Paso Cnty.*, 946 F.3d 717, 724 (5th Cir. 2020).

Here, it is undisputed that Davis has a disability and is regarded as having a disability. ECF 1, at 4 ("I am a deaf inmate . . . ."); ECF 1-3, at 2 (audiologist note regarding Davis's "hearing disability"); ECF 15-1, at 2 (noting Davis's "severe hearing impairment"). Further, it is undisputed that he is qualified to receive the inmate services and programs he identifies, including phone calls home, recreation, showers, and gym. *See* ECF 17-7. The sole issue is whether the defendants discriminated against Davis by denying him reasonable accommodations. *See Halpern*, 669 F.3d at 461–62; *Lamone*, 813 F.3d at 505; *Baxley*, 508 F. Supp. 3d at 63.

Davis first claims he was denied a reasonable accommodation to enable him to use the telephone to contact his family like other inmates are permitted to do. *See* ECF 17-4, at 6; ECF 17-7, at 1–4. He asserts that the phones designed for use by persons with hearing impairments have not been operational or there were no communications assistants available necessary to make calls on the phones. *See* ECF 17-4, at 6; ECF 17-7, at 1–4. Davis was provided assurances that efforts were underway to repair the phones. *See* ECF 1-1, at 2; ECF 1-2, at 3. But he says the relay phone service has not been made available to him. The defendants dispute his contention. They say that "Davis has access to a TTY phone which he has used for his parole hearings . . . [and] also has a

tablet assigned to him which has closed captioning functions to assist with hearing impairment." ECF 15-2, at 2, ¶ 6. Davis does not dispute that he was given a tablet to use, but he insists that it does not allow him to call his family. The defendants provide no evidence about when the TTY phones were repaired, whether Davis has been able to use a TTY phone to call his family (as opposed to attend a parole hearing), or how the closed captioning feature on the tablet allows Davis to make phone calls to his family. *Id*. There is a genuine dispute of material fact as to whether Davis received a reasonable accommodation to enable him to make phone calls.

The defendants suggest Davis's ADA claim fails because he refused to use the tablet he was provided to make phone calls. They are correct that a willful refusal to accept accommodations that would allow Davis to make phone calls would defeat his ADA claim. *See Cartagena v. Lovell*, 103 F.4th 171, 185 (4th Cir. 2024) (noting the ADA does not "support[] a claim for discrimination when the plaintiff rebukes the very accommodations tailored" to provide access to programs available to prison general population). But there is no evidence in the record that Davis could use the tablet to make phone calls to family. Nor is there any evidence that the defendants gave Davis access to functioning TTY equipment to make phone calls for the better part of two years. Davis, by contrast, offers evidence that he was repeatedly told the TTY phones were either inoperative or, when they were supposedly operative, he discovered there were no available communications assistants, which are required to make the relay phone service operate properly. ECF 17-4, 17-7. Davis also has offered evidence that the tablet did not enable him to call his family like other inmates. ECF 17-4, at 2–3, 4. On this record, the Court cannot conclude that Davis has manufactured an ADA claim. On the contrary, there is a genuine dispute of material fact as to whether Davis was provided a reasonable accommodation to enable him to make phone calls to his family.

Davis also claims he was denied a reasonable accommodation to notify him about opportunities such as recreation, showers, and gym. ECF 17-7, at 1–4. He says that inmates who can hear the announcements have these opportunities while he does not. In response, the defendants merely state Davis was provided with a picture book to communicate with guards. Yet they do not explain how a picture book possibly could notify Davis when it is time for recreation, showers, or gym. Thus, there is a genuine dispute of material fact as to whether Davis was provided a reasonable accommodation to notify him about activities that hearing inmates get notice of.

On the current record, the Court finds there is a genuine dispute of material fact as to whether Davis was provided reasonable accommodations for his hearing impairment. The defendants have not shown that they are entitled to judgment as a matter of law. Their summary judgment motion is denied.

## IV.     Appointment of Counsel

Davis's claims may move forward. The numerous factual disputes warrant discovery and legal analysis. "[D]istrict courts have discretion to appoint counsel in civil cases and abuse that discretion by declining to do so where the case of an indigent person presents exceptional circumstances." *Jenkins v. Woodard*, 109 F.4th 242, 247 (4th Cir. 2024) (citation and quotations omitted). Exceptional circumstances exist if (1) plaintiff has a "colorable claim" and (2) considering the claim's objective complexity and his subjective abilities, plaintiff "lacks the capacity to present it." *Id.* (citation and quotations omitted). Davis has a colorable claim, and he does not have the capacity to present it. The Court finds exceptional circumstances warrant the appointment of an attorney to represent him under § 1915(e)(1).

**V.     Conclusion**

By separate Order that follows, the defendants' motion, treated as a motion for summary judgment, is denied, and Davis's motion to reconsider appointment of counsel is granted.

<u>July 16, 2025</u>
Date

_____
Deborah L. Boardman
United States District Judge